UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF NEW YORK

|  |  |
|---|---|
| RASHAUN ISIAH PRIEST,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner,<br>Social Security Administration,<br><br>Defendant. | CIVIL ACTION<br>NO. 14-cv-01053-WGY |

WILLIAM G. YOUNG, U.S. District Judge[1]          May 17, 2016

**MEMORANDUM & ORDER**

I.   INTRODUCTION

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Compl. ¶ 4, ECF No. 1. The plaintiff-claimant, Rashaun Isiah Priest ("Priest"), seeks review of the denial of his application for social security disability insurance benefits and supplemental security income payments (collectively, "benefits") by the Acting Commissioner of the Social Security Administration (the "Commissioner"). Id. ¶¶ 1, 2. Priest argues that the decision of the Administrative

---

[1] Of the District of Massachusetts, sitting by designation. ECF No. 14.

[1]

Law Judge ("the hearing officer")[2] is not supported by substantial evidence and is contrary to law.  Brief ("Pl.'s Mem.") 2, 3, ECF No. 11.  Priest requests the reversal of the Commissioner's decision and the grant of the benefits for which he applied.  Id. at 1.  The Commissioner argues that the hearing officer applied the appropriate legal standards and that the hearing officer's factual findings are supported by substantial evidence.  Mem. Law Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") 9, 19, ECF No. 13.  The Commissioner accordingly requests this Court enter judgment affirming the Commissioner's decision.  Id. at 21.

A.  **Procedural History**

On January 4, 2012, Priest applied for benefits.  Administrative R. ("Admin. R.") 11, ECF No. 10.[3]  The

---

[2] For an explanation of this term, see Vega v. Colvin, No. CV 14-13900-WGY, 2016 WL 865221, at *1 n.1 (D. Mass. Mar. 2, 2016).  Some of the critiques of the Social Security Appeals process discussed in Vega appear to have been addressed by the government, at least somewhat.  See Gerald K. Ray & Jeffrey S. Lubbers, A Government Success Story: How Data Analysis by the Social Security Appeals Council (With a Push from the Administrative Conference of the United States) is Transforming Social Security Disability Adjudication, 83 Geo. Wash. L. Rev. 1575, 1576 (2015) (asserting that there have been "significant improvements in the quality and consistency of disability case review").

[3] The record of the administrative proceedings in this case is split across several docket entries, labeled 10-1 through 10-9.  For the sake of clarity, this memorandum will cite to page numbers in the continuously paginated record as a whole rather

Administration denied his application on February 15, 2012.  Id. at 54.  On March 7, 2012, Priest requested a hearing.  Id. at 63.  Priest appeared and testified at such a hearing, which was held on May 10, 2013.  Id. at 29.  On May 31, 2013, the hearing officer denied Priest's application for benefits.  Id. at 25.  Priest then requested that the Appeals Council (the "Council") review the hearing officer's decision.  Id. at 5-6.  The Council denied Priest's request on June 27, 2014, and the hearing officer's decision thus became the Commissioner's final decision.  Id. at 3-4.

On August 25, 2014, Priest filed a complaint under 42 U.S.C. § 405(g) seeking review of the Commissioner's decision, Compl. ¶ 4, which the Commissioner answered on December 8, 2014, Def.'s Answer, ECF No. 9.  On May 5, 2015, the case was reassigned to this session.  Reassignment Order 1, ECF No. 14.

    B.    **Factual History**

The hearing officer's factual findings are not in dispute, as Priest's appeal focuses instead on the hearing officer's application of a particular legal standard in evaluating his credibility, and a vocational expert's testimony.  See Pl.'s Mem. 1-8.  For the facts as found by the hearing officer, see Admin. R. 13-24.

---

than to individual docket entries that correspond to parts of the record.

## II. LEGAL STANDARDS

### A. Standard of Review

Pursuant to Section 205(g) of the Social Security Act, this Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

"The Court's role in reviewing a social security disability case is to determine whether appropriate legal standards were applied and assess whether the administrative officer's findings of fact are supported by substantial evidence." Aregano v. Astrue, 882 F.Supp.2d 306, 314 (N.D.N.Y. 2012) (internal citation omitted); see also Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation omitted). There is legal error "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards." Martone v. Apfel, 70 F.Supp.2d 145, 148 (N.D.N.Y. 1999).

### B. Disability Standard

To determine whether an applicant is disabled under the Act, the Commissioner employs a five-step analysis. As the Second Circuit summarized, the steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments;

> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). The burden of proof is on the claimant in the first four steps, and the burden is on the Commissioner with respect to the final step. Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004) (internal citations omitted).[4]

**III. THE HEARING OFFICER'S DECISION**

At the first step, the hearing officer determined that Priest had not engaged in substantial gainful activity since January 4, 2012. Admin. R. 13. At the second step, the hearing officer found that Priest suffered from a mood disorder, cannabis abuse, and alcohol abuse. Id. At the third step, the hearing officer concluded that Priest's impairments did not meet the severity of the impairments listed in the regulations. Id. at 15. At the fourth step, the hearing officer determined that

---

[4] There is an additional doctrine relating to substance abuse that was employed by the hearing officer, see infra note 5, but the hearing officer's application of it to the facts in this case is not an issue on appeal.

Priest's impairments could reasonably be expected to cause his alleged symptoms, but that Priest's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible "to the extent they [were] inconsistent with [his] residual functional capacity assessment . . .." Id. at 19.

The hearing officer then determined that Priest had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," subject to a wide variety of non-exertional impairments. See id. at 16.

At the fifth and what is usually the final step, the hearing officer concluded that no jobs existed in significant numbers in the national economy that Priest could perform. Id. at 20.

As this case involved substance abuse, however, the hearing officer next considered whether Priest would be disabled were he not using drugs.[5] Id. at 21. First, the hearing officer concluded that, if Priest quit using drugs, his remaining

---

[5] In cases involving substance abuse, a claimant first must satisfy the five-step analysis and then prove that substance abuse is not "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Substance abuse is a contributing factor where the claimant would not be disabled "if [the claimant] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). The burden of proof is on the claimant to establish disability without drug use. Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123-25 (2d Cir. 2012).

impairments would not meet the severe impairment requirement. Id. Second, the hearing officer determined that, if Priest quit using drugs, he would retain the functional capacity "to perform a full range of work at all exertional levels" with non-exertional limitations of only "perform[ing] simple, repetitive tasks in low stress occupations defined as those having no more than occasional decision[-]making . . . and no more than occasional changes in the work setting and . . . no interaction with the public and no more than occasional interaction with co-workers." Id. at 22. Third, the hearing officer concluded that, if Priest refrained from using drugs, a significant number of jobs would exist in the national economy that he could perform. Id. at 23–24.

The hearing officer determined that Priest's drug abuse was a contributing factor material to the determination that Priest was disabled. Id. at 24. Accordingly, the hearing officer concluded that Priest was not disabled under the Act. Id.

## IV. ANALYSIS

Priest makes two arguments: (1) that the hearing officer failed to apply the correct legal standard in evaluating his credibility, Pl.'s Mem. 3-5; and (2) that the hearing officer's decision incorporated the erroneous testimony of a vocational expert, id. at 5-8.

### A. Credibility

Priest first argues that the hearing officer "failed to apply the correct legal standard in assessing [his] subjective complaints of pain[.]" Pl.'s Mem. 3.

Priest's entire argument rests on the hearing officer's conclusion that Priest's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [hearing officer's] residual functional capacity assessment for the reasons stated below." Admin. R. 19. Priest is correct that various courts in this Circuit have acknowledged that a hearing officer's discrediting of a claimant's testimony because of its inconsistency with a hearing officer's residual functional capacity determination is improper, because the latter is based, in part, on the extent to which the hearing officer finds the claimant credible. See, e.g., Gehm v. Astrue, No. 3:10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013) ("[I]t is improper to question the plaintiff's credibility because it is inconsistent with the [residual functional capacity] determined by the [hearing officer.]") (internal footnote omitted); Torres v. Comm'r of Social Sec., No. 13-CV-330, 2014 WL 69869, at *14 (E.D.N.Y. Jan. 09, 2014) (same). This Court joins this chorus of disapproval and notes that, generally, a hearing officer's statement that a "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not

credible to the extent they are inconsistent with [her] residual functional capacity assessment" is "conclusory and unhelpful." Abdulsalam v. Comm'r of Soc. Sec., No. 5:12-CV-1631 MAD, 2014 WL 420465, at *8 (N.D.N.Y. Feb. 4, 2014).

Here, however, the hearing officer did not simply rely on this conclusory assertion; instead, she followed it by laying out a catalog of inconsistencies between Priest's claimed medical impairments and his daily activities, Admin. R. 19, and between his testimony and various objective reports, id. at 20. She also noted Priest's failure to follow prescribed treatment plans and inability to attend therapy sessions, id. at 19, and medical opinions that were contrary to the severity Priest claimed, id. at 20. Priest does not challenge these factual findings, and, since they constitute substantial evidence supporting the hearing officer's credibility determination, the Court affirms the hearing officer's determination even though she improperly phrased that determination. See, e.g., Abdulsalam, 2014 WL 420465, at *8 ("[W]hile this [phrasing] is inadequate, by itself, to support a credibility finding, its use, does not make a credibility determination invalid.'") (quoting Crofoot v. Comm'r of Soc. Sec., No. 1:12-cv-521, 2013 WL 5493550, *11 (N.D.N.Y. Sept. 30, 2013)) (additional internal citation omitted).

B. **Vocational Expert Testimony**

Next, Priest argues that the hearing officer "failed to resolve multiple apparent conflicts between occupational evidence that the vocational expert ("VE") provided and the occupational information supplied by the Dictionary of Occupational Titles (the "Dictionary")." Pl.'s Mem. 5.

The parties agree that the VE testified that Priest could work as a kitchen helper, cleaner, or auto detailer. Compare Pl.'s Mem. 6, with Def.'s Mem. 20. The parties also agree that there is an unresolved inconsistency between the VE's testimony and the Dictionary regarding whether the cleaner occupation is an unskilled or semi-skilled occupation, and that not resolving this discrepancy was error. Compare Pl.'s Mem. 6-7, with Def.'s Mem. 20. The Commissioner argues that this error was harmless, however, because there was no unresolved conflict as to the VE's testimony regarding the occupations of kitchen helper or auto detailer, jobs requiring level-2 reasoning. Def. Mem. 20. Priest claims this error was not harmless, because someone with the hypothetical RFC presented to the VE could not perform an occupation requiring level-2 reasoning. Pl.'s Mem. 6 ("None of the occupations to which the VE testified comply with the reasoning level prescribed by the RFC.").[6]

---

[6] Priest ostensibly claims that the VE's testimony with regard to these occupations also contained unexplained inconsistencies with the Dictionary's description of the kitchen helper and auto detailer occupations, and thus a remand is

The dispute before the Court, then, is whether the hearing officer erred in adopting the VE's testimony that someone with this hypothetical RFC could perform occupations requiring level-2 reasoning was in error. Priest points to the Dictionary's

---

necessary. Pl.'s Mem. 6. Along these lines, he argues that Social Security Ruling 00-4p is instructive here. Id. It provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

The hypothetical RFC presented to the VE was of someone "limited to performing simple, repetitive tasks in low[-]stress occupations . . . [with] no more than occasional decision-making required and no more than occasional changes in the work setting." Admin. R. 46. Priest argues that the VE's testimony that someone with this hypothetical RFC would be able to work as a kitchen helper or auto detailer, which require a reasoning level of 2,[6] was in error. Pl.'s Mem. 6-7.

This asserted error, however, does not originate in a conflict between the VE's testimony regarding "occupational evidence" and the Dictionary: the Commissioner notes that the VE's testimony on these two occupations is consistent with the Dictionary definition, because they both classify these occupations as unskilled work. Def.'s Mem. 21 (citing Dictionary of Occupational Titles Job Codes Nos. 318.687-010 and 915.687-034 (4th ed. rev. 1991)).

statement that level-2 reasoning means that a worker can "apply commonsense to carry out <u>detailed</u> but uninvolved written or oral instructions[,] [and d]eal with problems involving a few <u>concrete variables</u> in or from standardized situations." Pl.'s Mem. 6. Priest claims that such detail and variability is inconsistent with the hypothetical RFC -- "limited to performing simple, repetitive tasks in low[-]stress occupations . . . [with] no more than occasional decision-making required and no more than occasional changes in the work setting[,]" Admin. R. 46. -- presented to the VE, and that someone with that RFC would only be able to perform jobs that require level-1 reasoning, meaning following "simple one- or two-step instructions." Pl.'s Mem. 6.

Work requiring a reasoning level of 2 may nonetheless be "simple, routine and repetitive[,]" however. <u>Edwards</u> v. <u>Astrue</u>, No. 5:07-CV-898(NAM/DEP), 2010 WL 3701776, at *15 (N.D.N.Y. Sept. 16, 2010) (emphasis added). Here, Priest's limitations are similar to those discussed in <u>Cross</u> v. <u>Astrue</u>, No. 08-CV-0425(VEB), 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009), where the claimant was restricted to work that was "simple, low-stress, and entry-level, with no complex decision-making, no planning, scheduling or report writing, no multi-tasking, little change in the work environment, and infrequent interaction with the public or co-workers." <u>Id.</u> at *8. The Court agrees with

the Cross court that a VE, and thus, a hearing officer, is entitled to conclude that someone with these limitations is nonetheless capable of performing work that involves level-2 reasoning. See id. The Court thus affirms the Commissioner's decision, even though, consistent with Priest's argument, it would have been reasonable for the VE, and thus, the Commissioner, to have found someone with that RFC capable of only level-1 reasoning. See, e.g., Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982) ("[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence. Congress has instructed us that the factual findings of the [Commissioner], if supported by substantial evidence, shall be conclusive.") (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (additional internal citation omitted).[7]

## V. CONCLUSION

For the aforementioned reasons, the decision of the Commissioner is affirmed.

**SO ORDERED.**

---

[7] Priest also notes that Mr. Belchick described all three jobs -- cleaner, auto-detailer, and kitchen helper -- as "light work," when they are all, in fact, "medium" work. Pl.'s Mem. 7. Though this testimony is in conflict with the Dictionary, it is of no note because the hearing officer determined that Priest could perform work at all exertional levels, not just "light work." See Admin R. 22.

/s/ William G. Young
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE